UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| SCOTT THOMSEN, ) | |
| ) | |
|    *Plaintiff*, ) | |
| ) | Case No. 2:22-cv-5 |
| v. ) | |
| ) | Judge Atchley |
| SULLIVAN COUNTY, TENNESSEE, CITY ) | |
| OF BRISTOL, TENNESSEE, JAMES ) | Magistrate Judge Wyrick |
| OWENS & KRISTOFF NEWSOME, ) | |
| ) | |
|    *Defendants*. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Kristoff Newsome and Sullivan County's Motion for Summary Judgment [Doc. 84], James Owens's Motion for Summary Judgment [Doc. 91], and the City of Bristol's Motion for Summary Judgment [Doc. 94]. Each movant seeks dismissal of Plaintiff Scott Thomsen's sole remaining claim for fabrication of evidence. For the reasons explained below, Newsome and Sullivan County's motion will be **GRANTED IN PART** and **DENIED IN PART**, Owens's motion will be **DENIED**, and the City of Bristol's motion will be **GRANTED**.

### I. FACTUAL BACKGROUND

In this § 1983 action, Plaintiff Scott Thomsen alleges that Defendants Kristoff Newsome and James Owens fabricated evidence and caused him to be charged with simple possession of a controlled substance. The story begins on January 29, 2021, at the YMCA in Bristol, Tennessee. Bristol City Police Department Officer James Owens observed a vehicle parked in the striped off area between two handicapped parking spaces. [Doc. 13-2 (hereinafter "Body Cam") at 00:01].[1]

---

[1] The parties manually filed all video evidence with the Clerk's Office. [Docs. 13-2, 13-3]. The two manual filings consist of Owens's body cam and dash cam footage. The Court will refer to each manual filing as "Body Cam" and "Dash Cam" respectively.

1

Owens exits his patrol car and encounters Plaintiff. [*Id.* at 00:01–04]. Owens does not activate his body cam audio for approximately forty-four seconds, but the footage shows Plaintiff hand Owens his driver's license. [*Id.* at 00:28–42, 00:44]. Immediately after activating his body cam audio, Owens informs Plaintiff that his vehicle is illegally parked in an area designated for handicap and wheelchair access. [*Id.* at 00:45–49].

This is when things take an unexpected turn. Owens tells Plaintiff that his parking placement violates state law and asks him whether he promises to appear in court on April 5th if released on a misdemeanor state citation. [*Id.* at 01:55–02:05]. In response, Plaintiff says, "No, I won't. I'll be out of the country." [*Id.* at 02:05]. Owens quickly proceeds to place Plaintiff under arrest. [*Id.* at 02:08]. While being handcuffed, Plaintiff asks for an alternative appearance date, but Owens says that appearances take place on the dates he sets. [*Id.* at 02:19–02:26].

Owens conducts a search incident to Plaintiff's arrest. [*Id.* at 03:20]. The search yields Plaintiff's wallet, among other things, and Owens places the wallet on the hood of his patrol car. [Doc. 13-3 (hereinafter "Dash Cam") at 03:24]. The wallet remains untouched for nearly ten minutes until Owens picks it up. [*Id.* at 13:14]. For approximately twenty seconds, Owens examines the wallet's contents. [Body Cam at 13:16–36]. He appears to count the cash in the wallet and briefly inspects its card slots. [*Id.*]. Following his inspection, Owens places the wallet and Plaintiff's cell phone and driver's license into a manilla envelope, which he closes with its affixed metal clasps. [*Id.* at 13:35–47]. Owens places the manilla envelope in the passenger seat and begins transporting Plaintiff to the Sullivan County Detention Center. [*Id.* at 14:36–54]. When Plaintiff asks where his wallet is, Owens holds up the manilla envelope and indicates that it is "right here." [*Id.* at 14:56–15:00].

Owens arrives at the Detention Center after a twenty minute drive. [*Id.* at 34:56]. He escorts Plaintiff inside while holding the manilla envelope in his right hand. [*Id.* at 37:52]. Critically, this is the last of the video footage in this case, and what happens inside the Detention Center is not captured on camera. Plaintiff and Defendants offer competing accounts of what unfolded inside the Detention Center. Owens avers that he escorted Plaintiff to a bench and placed the manilla envelope on a concrete ledge. [Doc. 91-1 at ¶ 18]. He then began working on Plaintiff's arrest report and never touched the manilla envelope again. [*Id.* at ¶ 18–19].

Sullivan County Corrections Officer Kristoff Newsome enters the picture at this point. Newsome was responsible for processing Plaintiff. As part of the intake process, Newsome asked Plaintiff questions about his identifying information and medical history. [Doc. 91-2 at 40–41]. Newsome then searched Plaintiff's belongings, including his wallet. [Doc. 54 at ¶ 10]. Newsome claims he discovered a pill inside Plaintiff's wallet and denies that he planted it there. [*Id.*]. Owens determined the pill was Hydrocodone and logged it into evidence. [Doc. 1 at 13].

Plaintiff tells a different story. He denies that he had any illegal drugs in his wallet on the day of his arrest. [Doc. 91-2 at 25]. Quite the opposite, Plaintiff claims that either Owens or Newsome planted the pill in his wallet. [*Id.* at 24]. Plaintiff explains that Owens and Newsome had custody of his wallet, and during their period of custody was when a pill suddenly appeared inside. [*Id.*]. Setting aside these competing accounts, Plaintiff was ultimately charged with simple possession of a Schedule II controlled substance and unauthorized use of disabled parking. Both charges were dismissed and expunged upon Plaintiff's payment of costs. [Doc. 1 at 16].

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

3

judgment as a matter of law." FED. R. CIV. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56 (c)(1). When ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citations omitted).

The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248–49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475-76 (6th Cir. 2010). A mere

4

scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

There is an added wrinkle to the summary judgment standard when video evidence is involved. "To the extent that videos in the record show facts so clearly that a reasonable jury could view those facts in only one way, those facts should be viewed in the light depicted by the videos." *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). On the other hand, if the "facts shown in videos can be interpreted in multiple ways or if videos do not show all relevant facts, such facts should be viewed in the light most favorable to the non-moving party." *Id.* (citing *Godawa v. Byrd*, 798 F.3d 457, 463 (6th Cir. 2015)).

## III. ANALYSIS

Plaintiff's sole remaining claim is for fabrication of evidence. The Court will first address individual liability and then consider municipal liability. For the following reasons, the Court concludes that Plaintiff's claim against Owens and Newsome may proceed to trial, but his claim against Sullivan County and Bristol fails to survive summary judgment.

### A. Owens and Newsome

"Fabrication of evidence claims require two showings: one, that evidence was knowingly fabricated; and two, that it is reasonably likely that the fabricated evidence affected the jury's decision." *Price v. Montgomery Cnty.*, 72 F.4th 711, 723 (6th Cir. 2023) (citing *Jackson v. City of Cleveland*, 925 F.3d 793, 815 (6th Cir. 2019)). Because a factual dispute remains as to the first element and Plaintiff satisfies the second, summary judgment on this claim is unwarranted.

### 1. Owens – Knowing Fabrication

Owens argues that Plaintiff's version of events fails to create a triable issue of fact on the knowing fabrication element. [Doc. 93 at 11]. Owens's argument focuses primarily on the uncertainties underlying Plaintiff's deposition testimony. [*Id.* at 11–13]. Specifically, when asked what evidence he had to show that Owens planted the pill in his wallet, Plaintiff indicated he had "no definite knowledge." [Doc. 91-2 at 23]. Plaintiff acknowledged that he was "guessing" that the pill came from Owens or Newsome. [*Id.* at 25]. This equivocal testimony, in Owens's view, is insufficient to allow Plaintiff's fabrication of evidence claim to proceed.

Plaintiff's deposition testimony, to be sure, is far from compelling. But he did deny having drugs in his wallet before Owens and Newsome exercised control over it, and this testimony is sufficient to survive summary judgment. [Doc. 91-2 at 24–25]. The Sixth Circuit's decision in *Jacobs v. Alam*, 915 F.3d 1028 (6th Cir. 2019) proves instructive on this point. In that case, the plaintiff sued the defendant officers for fabrication of evidence and excessive force. *Jacobs*, 915 F.3d at 1033. The essence of the plaintiff's fabrication claim was that "the officers planted a .9-millimeter bullet on the kitchen floor that was previously 'chambered' in his gun in an attempt to bolster their claim that he pulled a gun on them before the shooting." *Id.* at 1042. The plaintiff denied ever ejecting a round from or racking his gun. *Id.* at 1033–34, 1042.

The defendant officers told a different story. They claimed that the plaintiff pulled a gun and fired it at them. *Id.* at 1034. And they suggested the plaintiff lied about the capacity of his gun. *Id.* at 1042. In the defendant officers' view, the record blatantly contradicted the plaintiff's version of events, meaning they were entitled to summary judgment. *Id.* The Sixth Circuit disagreed, principally because under the plaintiff's account, "it [was] impossible for a bullet from his gun to land on the kitchen floor unless it was planted by police officers after the fact in order to cover up

a knowing display of excessive force." *Id.* No evidence was presented to contradict the plaintiff's testimony that he did not rack or fire his gun. *Id.* For that reason, the Sixth Circuit dismissed the defendant officers' interlocutory appeal regarding the denial of qualified immunity for lack of jurisdiction. *Id.* (citations omitted).

The facts here warrant the same conclusion reached in *Jacobs*—namely, that Plaintiff's version of events renders summary judgment improper on his fabrication of evidence claim. The plaintiff in *Jacobs* told a story which made it impossible for the bullet to land on his kitchen floor unless the defendant officers planted it there. The same is true of Plaintiff's account here. Plaintiff denies having drugs in his wallet on the day of his arrest, and only when Owens and Newsome took custody of the wallet did a pill suddenly appear inside. [Doc. 91-2 at 24–25]. Under this version of events, as in *Jacobs*, "it is impossible" for a pill to have been located inside Plaintiff's wallet unless Owens or Newsome—the only other individuals who had custody of the wallet on the date in question—planted it there. *Jacobs*, 915 F.3d at 1042.

In an effort to challenge Plaintiff's account, Owens also points to the video footage and his own testimony. Owens argues that the evidentiary record establishes the wallet's chain of custody and confirms that he did not plant the pill. [Doc. 93 at 13–16]. This argument too fails to justify summary judgment in Owens's favor. The Court agrees with Owens that the body cam and dash cam footage at the YMCA never shows him place anything inside Plaintiff's wallet. But, as Owens acknowledges, video footage fails to capture his entire encounter with Plaintiff and his handling of Plaintiff's wallet from start to finish. [Doc. 93 at 15]. No video footage, for example, shows how the wallet was handled once Owens and Plaintiff went inside the Sullivan County Detention Center. For this period of time not accounted for on camera, Owens points to his sworn declaration, where he avers that after entering the Detention Center, he placed the manilla envelope containing

7

the wallet onto a platform and never touched it again. [Doc. 91-1 at ¶ 19–20]. And when asked what knowledge he had of Owens's activities while inside the Detention Center, Plaintiff testified that he was "writing something down" but otherwise had no knowledge. [Doc. 91-2 at 14, 16].

The Court does sympathize with Owens's position. Plaintiff's evidence offered in support of his fabrication claim against Owens is far from compelling. Still, the Court cannot ignore Plaintiff's testimony that he did not have drugs in his wallet on the day of his arrest and before Owens and Newsome took custody of the wallet. No video footage reveals what took place inside the Detention Center, and simply because Plaintiff did not know of Owens's every action inside the Detention Center does not render summary judgment proper.[2] Owens's argument, taken to its logical conclusion, would seem to require every fabrication of evidence claim to be supported by the plaintiff's direct observation of the allegedly fabricating act—in this case, the pill being planted. Consequently, the Court concludes that a material factual dispute remains as to whether Owens knowingly fabricated evidence.

### 2. Newsome – Knowing Fabrication

Newsome is not entitled to summary judgment on the knowing fabrication element for the same reasons Owens is not entitled to summary judgment. Nonetheless, Newsome raises certain arguments that must be addressed separately here. These arguments focus on statements Plaintiff and his former criminal defense attorney made about Plaintiff's travels to Mexico. None of these arguments, however, render summary judgment proper.

Newsome cites a declaration from Sullivan County Assistant District Attorney David Bledsoe. [Doc. 84-2]. Bledsoe prosecuted the criminal case against Plaintiff when he was charged

---

[2] The Court notes that the dash cam footage is at an angle that does not show the manilla envelope containing the wallet either during the ride to the Detention Center or when Owens removes it from his patrol car upon arrival at the Detention Center. [Dash Cam at 16:30–38:03].

8

with simple possession and unauthorized use of disabled parking. [*Id.* at ¶ 4–5]. Bledsoe avers that during plea negotiations, Plaintiff's then attorney told him that Plaintiff received the pill found in his wallet from a doctor or dentist in Mexico. [*Id.* at ¶ 6]. This statement, in Newsome's view, is admissible against Plaintiff as a statement of a party opponent, and its contents support entry of summary judgment. [Doc. 84 at 5, 13–14].

Contrary to Newsome's argument, this statement from Plaintiff's attorney is inadmissible. Federal Rule of Evidence 410 addresses this precise situation. That rule deems inadmissible any "statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea." FED. R. EVID. 410(a)(4). Such statements are inadmissible against the defendant who participated in the plea discussions. FED. R. EVID. 410(a). For this rule to preclude admission of a statement, then, two things must be true: (1) the relevant statement was made by the criminal defendant to the prosecuting authority during plea discussions; and (2) those plea discussions did not result in a guilty plea, or they resulted in a later-withdrawn guilty plea.

Both requirements are satisfied here. It is true that Plaintiff's attorney, rather than Plaintiff himself, allegedly made this statement to Bledsoe. [Doc. 84-2 at ¶ 6]. But this is a distinction without a difference. Statements made to a prosecutor during plea discussions are inadmissible "whether the statement is made by the defendant or an attorney of the defendant authorized to do so." *United States v. Bridges*, 46 F. Supp. 2d 462, 465 (E.D. Va. 1999) (noting that the Advisory Committee Notes to the 1979 amendment of Federal Rule of Criminal Procedure 11(e)(6), which aligned with Federal Rule of Evidence 410, state that the rule "would cover statements by defense counsel regarding defendant's incriminating admissions to him" (citing FED. R. CRIM. P. 11(e)(6) advisory committee's note to 1979 amendment)). This extension of the rule makes logical sense.

9

It would make little sense, after all, to deem a defendant's statements during plea discussions inadmissible, but not those of his attorney, the very person who is supposed to represent the defendant's interests and engage in negotiations on his behalf. Thus, simply because Plaintiff's attorney supposedly made the statement to Bledsoe does not bring the statement outside the scope of Rule 410. Plaintiff's attorney made the statement to a prosecutor during plea discussions, which renders the first requirement satisfied.

The second requirement is also satisfied. Indeed, the record establishes that Plaintiff never pled guilty to the simple possession charge. Plaintiff confirmed this in his deposition and testified that he did not plead guilty to the simple possession charge. [Doc. 84-3 at 3]. With both the first and second requirements satisfied, the statement Plaintiff's attorney allegedly made to Bledsoe is inadmissible against Plaintiff under Rule 410. The Court can only consider admissible evidence when determining whether a material factual dispute exists, so the attorney's supposed statement provides no basis to grant summary judgment in Newsome's favor. *Aquilina v. Wriggelsworth*, 759 F. App'x 340, 342 (6th Cir. 2018) (citations omitted).

Beyond this statement, Newsome also emphasizes portions of Plaintiff's deposition testimony to support his request for summary judgment. Plaintiff testified that before his arrest at issue, he traveled to Mexico numerous times for dental work and purchased drugs there on occasion. [Doc. 84 at 7–10, 14]. In none of the excerpts Newsome cites, however, does Plaintiff ever say that he obtained the pill found in his wallet in Mexico. That Plaintiff may have obtained drugs in Mexico before his arrest does not eliminate other aspects of his testimony, particularly his claim that he did not have any drugs in his wallet on the date of his arrest. The prior trips to Mexico may prove relevant to undermining Plaintiff's allegations of fabrication, but they do not provide a basis to fully disregard his testimony and grant summary judgment.

The same is true of Newsome's sworn declaration. Newsome avers that he found the pill inside Plaintiff's wallet while conducting an administrative search and denies planting it there. [Doc. 54 at ¶ 10]. It cannot be, Newsome laments, that Plaintiff may "make a self-serving statement alleging dishonesty . . . and ride that all the way to a jury." [Doc. 84 at 12]. Juries prove necessary when cases turn entirely on credibility determinations, and this case presents one of those situations. A jury may ultimately decide that Plaintiff's account is self-serving and unbelievable, but that is for a jury to decide, not the Court. Given the absence of video footage in the Detention Center and the substance of Plaintiff's allegations, factual disputes remain as to whether Newsome knowingly fabricated evidence.

### 3. Effect on the Jury's Decision

In addition to demonstrating knowing fabrication, Plaintiff must show that "it is reasonably likely that the fabricated evidence affected the jury's decision." *Price*, 72 F.4th at 723 (citing *Jackson*, 925 F.3d at 815). Regarding this second element, it is satisfied "when fabricated evidence prompts the state to empanel a grand jury." *Id.* (citing *Jackson*, 925 F.3d at 816–17). "And fabricated evidence that 'is used as [the] basis for a criminal charge' can form the basis for a § 1983 claim because, absent that evidence, there would have been no jury." *Jackson*, 925 F.3d at 816 (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 294 n.19 (3d Cir. 2014)).

Owens, but not Newsome, argues that Plaintiff cannot satisfy this element because he was never convicted on the simple possession charge. [Doc. 93 at 10–11]. Before turning to the merits of Owens's argument, the Court must determine whether Newsome may also benefit from this argument, despite not raising it himself. In essence, the Court must determine whether it may grant summary judgment to Newsome *sua sponte*. The propriety of *sua sponte* summary judgment turns on the losing party's notice "that summary judgment could be granted against him." *Excel Energy,*

11

*Inc. v. Cannelton Sales Co.*, 246 F. App'x 953, 960 (6th Cir. 2007). One way the losing party can acquire such notice is when some but not all of his opponents file motions for summary judgment. *Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401, 407 (6th Cir. 1999). *Lakian* illustrates this concept well. There, three of the four defendants moved for summary judgment on statute of limitations grounds. *Id.* at 405. The district court granted summary judgment to all defendants, even though the fourth defendant, Lakian, never filed a motion for summary judgment or raised the statute of limitations defense. *Id.* at 405, 407. The Sixth Circuit upheld the district court's decision granting *sua sponte* summary judgment in Lakian's favor because "the other parties' motions for summary judgment put [the plaintiff] on notice that, to survive summary judgment, it had to come forward with evidence showing that the statute of limitations" did not operate to bar its claims. *Id.* at 407.

The same proves true here. Both Owens and Newsome moved for summary judgment, but only Owens raised the fact that Plaintiff was never convicted on the simple possession charge. Owens's briefing notified Plaintiff that he would need to rebut the conviction argument to survive summary judgment. *Id.* Despite this notice, Plaintiff never responded to and never rebutted Owens's argument. Considering the notice Owens's motion for summary judgment provided to Plaintiff, the Court concludes that Newsome may also benefit from this argument, and it would not be improper to grant *sua sponte* summary judgment in his favor.

The argument regarding Plaintiff's lack of a conviction applies to both Owens and Newsome, but it fails in any event. Because the simple possession charge was dropped and Plaintiff was never convicted, Owens argues that Plaintiff cannot demonstrate that the allegedly fabricated evidence affected a jury's decision. [Doc. 93 at 10–11]. Owens cites to the Sixth Circuit's decision in *Anderson v. Knox County* for support. No. 22-5280, 2023 WL 4536078 (6th Cir. July 13, 2023).

12

In *Anderson*, the Sixth Circuit rejected the plaintiff's fabrication of evidence claim because following a jury trial, the plaintiff was acquitted rather than convicted. *Id.* at *8. Given the jury's decision to acquit, the Sixth Circuit concluded that the allegedly fabricated evidence necessarily did not affect the jury's decision. *Id.*

At the outset, the Court notes that "the paper of unpublished decisions cannot escape the scissors of published decisions on point." *Keahey v. Marquis*, 978 F.3d 474, 480 (6th Cir. 2020). The paper of *Anderson*, then, cannot escape the scissors of *Price* and *Jackson*. *Price* and *Jackson*, both published decisions of the Sixth Circuit, state that a fabrication of evidence claim may lie where the alleged fabricated evidence forms the basis for a criminal charge. *Price*, 72 F.4th at 723; *Jackson* 925 F.3d at 816. The import of these cases, then, is that a plaintiff's injury from fabrication of evidence can occur as early as when charges are brought. *See Halsey*, 750 F.3d at 294 n.19 (noting that "if fabricated evidence is used as a basis for a criminal charge that would not have been filed without its use[,] the defendant certainly has suffered an injury").

It is undeniable that the pill found in Plaintiff's wallet, which Plaintiff claims was planted, formed the basis for his simple possession charge. True, the charge was ultimately dropped, and Plaintiff never faced a jury. [Doc. 1 at 15]. But *Price* and *Jackson* suggest that Plaintiff did not need to face a jury or be convicted to maintain a fabrication of evidence claim; it is enough that the State brought charges based on allegedly fabricated evidence. Accordingly, Plaintiff satisfies the second element, and his fabrication of evidence claim against Owens and Newsome survives summary judgment.

### B. Sullivan County and Bristol

Plaintiff also seeks to impose municipal liability against Sullivan County and Bristol. Though Plaintiff's complaint and briefing often lack clarity, the Court construes Plaintiff's

municipal liability claims to be based on failure to train and custom theories. Neither theory passes muster, however, and Plaintiff's municipal liability claims against Sullivan County and Bristol are subject to dismissal.

A successful municipal liability claim requires the plaintiff to show that his injuries resulted from the municipality's policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Municipal liability may attach upon proof of any one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 323 (6th Cir. 2023) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). Plaintiff's specific claims are that Sullivan County and Bristol failed to train its officers and maintained customs that tolerated constitutional violations.

Before considering each theory of liability, the Court must examine the sufficiency of Plaintiff's complaint. Both Sullivan County and Bristol argue that Plaintiff's complaint fails to allege a *Monell* claim based on fabrication of evidence. [Doc. 84 at 15; Doc. 96 at 11–12]. The Court disagrees. Plaintiff's complaint, though far from robust, does suggest that employees of these municipal defendants fabricated evidence and allege *Monell* claims premised on determinations of probable cause and reasonable suspicion. [Doc. 1 at ¶ 14, 20]. Despite the complaint's failure to specifically reference a *Monell* claim tied to fabrication of evidence, the Sixth Circuit has deemed a *Monell* claim sufficiently pled under similar circumstances. *Gregory v. City of Louisville*, 444 F.3d 725, 754 (6th Cir. 2006) (holding that the plaintiff adequately pled a failure to train claim regarding *Brady* materials, even though the complaint did not specifically state as much, where the complaint made allegations relating to exculpatory materials and also

14

alleged a failure to train claim against the municipality based on its suggestive identification procedures, an issue separate from the *Brady* claim). So too here. Because Plaintiff's complaint advances allegations regarding fabrication of evidence and asserts *Monell* claims as to probable cause and reasonable suspicion, the Court concludes that, as in *Gregory*, Plaintiff's *Monell* claim based on fabrication of evidence is adequately pled.

### 1. Failure to Train

As best the Court can tell, Plaintiff's failure to train claim asserts that neither Sullivan County nor Bristol trained its officers regarding their obligation to not fabricate evidence. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). And a plaintiff must prove each of the following elements to succeed on a failure to train claim: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)). The deliberate indifference and causation elements are specifically designed to ensure that failure to train claims "do not transform § 1983 into a vicarious-liability statute," which would result in an impermissible expansion of municipal liability. *Gambrel v. Knox Cnty.*, 25 F.4th 391, 408 (6th Cir. 2022) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997)).

Plaintiff's failure to train claim fails for multiple reasons. First, Plaintiff fails to demonstrate how the training Sullivan County and Bristol provided proved inadequate. Both Sullivan County and Bristol produce evidence regarding the training they provided. Sullivan County, for example, shows that Newsome completed training programs approved by the

Tennessee Corrections Institute. [Doc. 89-1 at ¶ 8–11]. And Owens of Bristol avers that he completed all the training necessary to receive his POST certification in Tennessee. [Doc. 96 at 9; Doc. 13 at ¶ 4]. Plaintiff only responded to Sullivan County's motion for summary judgment, and in that response, Plaintiff claims in conclusory fashion that Newsome received inadequate training, without citation to any evidence. [Doc. 88 at 8]. In other words, Plaintiff offers nothing to demonstrate that the training provided was constitutionally inadequate, a deficiency which is fatal to his failure to train claim. *Lovingood v. Monroe Cnty., Tenn.*, No. 3:19-cv-9, 2021 WL 2338832, at *4 (E.D. Tenn. June 8, 2021) (granting summary judgment on failure to train claim where the plaintiff failed to show how the Tennessee Corrections Institute and POST training was constitutionally inadequate).

Plaintiff's failure to train claim fails for a second reason: he does not establish that Sullivan County or Bristol acted with deliberate indifference. To demonstrate that a municipality acted with deliberate indifference, "a plaintiff must prove that the violation of a clearly established right was a 'known or obvious consequence' of the lack of training or supervision." *Gambrel*, 25 F.4th at 408 (citations omitted). This burden is most often satisfied upon proof that the "municipality's employees engaged in a 'pattern of similar constitutional violations' separate from the conduct that harmed the plaintiff." *Id.* (citing *Connick*, 563 U.S. at 62). Absent such a pattern, and in a "narrow range of circumstances," a plaintiff may alternatively establish deliberate indifference through a single violation theory—that is, by relying solely on the instance of unconstitutional conduct involving the plaintiff. *Id.* (citing *Connick*, 563 U.S. at 63). The single violation theory requires "a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation." *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 738–39 (6th Cir. 2015) (internal quotation marks omitted).

Plaintiff does not point to any prior instances of fabrication, so his failure to train claim against Sullivan County and Bristol must proceed under the single violation theory. Even assuming Sullivan County and Bristol's training was inadequate, Plaintiff cannot show that Owens and Newsome's alleged fabrication of evidence was an obvious consequence of any deficient training. Consider the Sixth Circuit's recent decision in *Gambrel v. Knox County*. Two defendant officers engaged in a struggle with an arrestee, and one of the defendant officers, Ashurst, fatally shot him. *Gambrel*, 25 F.4th at 398. Amid the struggle, the officers tased the arrestee and struck him repeatedly with their flashlights and batons. *Id.* at 402. A bystander to the encounter testified in his deposition that the officers beat the arrestee despite his lack of resistance and could have handcuffed him at any time. *Id.* at 403.

The personal representative of the arrestee's estate sued the municipality on a failure to train theory, and the Sixth Circuit rejected the claim, finding that the plaintiff could not demonstrate that the municipality acted with deliberate indifference under a single violation theory. *Id.* at 407–08. This was so because the bystander alleged that the officers applied gratuitous force against the arrestee and engaged in patently unlawful conduct. *Id.* at 410. As a result, "it would not have been 'obvious' to Knox County that it needed to instruct a certified peace officer like Ashurst not to engage in (or permit Bolton to engage in) the gratuitous violence that [the bystander] alleges." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)). The Sixth Circuit noted that "even an untrained officer" would have understood the unlawful nature of the alleged gratuitous violence. *Id.* (citation and internal quotation marks omitted). Ultimately, "[b]ecause the need for training against this allegedly intentional misconduct was not 'obvious,'" the plaintiff could not prove deliberate indifference through the single violation at issue. *Id.* (citation omitted).

17

The nature of Plaintiff's allegations demands the same conclusion. Just as gratuitous force is patently unlawful, so too is planting evidence, which is precisely what Plaintiff alleges Owens and Newsome did. The obligation to not plant evidence, unlike, say, the contours of probable cause, does not fall within an "ambiguous gray area about which officers would obviously need training to differentiate lawful from unlawful conduct." *Id.* (citation and internal quotation marks omitted). Even untrained officers would understand that they cannot plant a pill inside an arrestee's wallet for purposes of framing him. Other circuits have reached this same conclusion when considering failure to train claims premised on fabrication of evidence. The Eighth Circuit, for example, held that there was no "patently obvious need" for the sheriff to train crime scene investigators not to fabricate evidence. *Livers v. Schenck*, 700 F.3d 340, 356 (8th Cir. 2012). Considering *Gambrel*, *Livers*, and the substance of Plaintiff's claims, the Court concludes that neither Sullivan County nor Bristol acted with deliberate indifference.

### 2. Customs Tolerating Unconstitutional Conduct

It is difficult to discern the crux of Plaintiff's custom claim. Plaintiff appears to claim that because Sullivan County lacks policies explicitly prohibiting fabrication of evidence, a custom emerged "in which such unconstitutional behavior is allowed to flourish." [Doc. 88 at 8].[3] The Court construes this claim as one alleging a custom of tolerating unconstitutional conduct. Because Plaintiff introduces no evidence to suggest a pattern of fabrication, his custom claim must fail.[4]

---

[3] Plaintiff only responded to Sullivan County's motion for summary judgment, so Plaintiff only speaks to Sullivan County's supposed customs. [Doc. 88 at 8]. Plaintiff makes no mention of Bristol's customs. Regardless, Bristol cites policies which specifically forbid officers from falsifying or tampering with evidence. [Doc. 96 at 13]. The existence of these policies refutes any potential notion that Bristol lacked policies prohibiting fabrication of evidence.

[4] The Court does not construe Plaintiff's filings as mounting a facial attack against the constitutionality of Sullivan County or Bristol's policies. After all, Plaintiff claims that Sullivan County had no written policy preventing fabrication, which aligns more with a custom argument. Even if Plaintiff is alleging the policies are facially unconstitutional, the Court is not aware of case law, nor does Plaintiff cite any, to suggest a municipality's policies are unconstitutional and illegal because they fail to affirmatively prohibit fabrication of evidence.

To impose liability on a municipality for an alleged custom, the custom "must 'be so permanent and well settled as to constitute a custom or usage with the force of law.'" *Miller v. Calhoun Cnty.*, 408 F.3d 803, 815 (6th Cir. 2005) (quoting *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996)). A custom of tolerance claim must be supported by evidence of "a clear and persistent pattern" of the alleged unlawful conduct. *Stewart v. City of Memphis*, 788 F. App'x 341, 346 (6th Cir. 2019) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). Plaintiff fails to make this showing. He offers no evidence of prior instances where Sullivan County or Bristol Officers fabricated evidence. For this reason, Plaintiff's custom of tolerance claim is subject to dismissal.[5]

## IV. CONCLUSION

Upon consideration of the record, Newsome and Sullivan County's Motion for Summary Judgment [Doc. 84] is **GRANTED IN PART** and **DENIED IN PART**, Owens's Motion for Summary Judgment [Doc. 91] is **DENIED**, and the City of Bristol's Motion for Summary Judgment [Doc. 94] is **GRANTED**. Only Plaintiff's claim for fabrication of evidence against Owens and Newsome may proceed to trial. Plaintiff's accompanying *Monell* claims against Sullivan County and Bristol are **DISMISSED WITH PREJUDICE**.

SO ORDERED.

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[5] Bristol also seeks dismissal of any *Monell* claims against it premised on the Fourth Amendment. [Doc. 96 at 6]. Because the Court already determined that Owens did not violate Plaintiff's Fourth Amendment rights, any accompanying *Monell* claims against Bristol necessarily fail. [Doc. 67 at 11]. This is so because a municipality may not be held liable under *Monell* absent an underlying constitutional violation. *Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2023).